UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA M.,[1] | ) |
| | ) No. 21 CV 1522 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) September 26, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Maria M. seeks disability insurance benefits ("DIB") asserting she is disabled by fibromyalgia, cervical spine degenerative disc disease, migraines, irritable bowel syndrome, gastritis, and depression with a mood disorder. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her DIB application. Before the court are the parties' cross motions for summary judgment. For the following reasons, Maria's motion is granted, and the government's is denied:

**Procedural History**

Maria filed her application for DIB in August 2018, alleging disability as of June 11, 2018. (Administrative Record ("A.R.") 20.) At the administrative level, her application was denied initially and upon reconsideration. (Id.) She then sought and was granted a telephonic hearing before an Administrative Law Judge ("ALJ"). (Id.) Maria appeared with an attorney at her September 2020 hearing, during

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect her privacy to the extent possible.

which she, a vocational expert ("VE"), and a medical expert ("ME") testified. (Id.) The ALJ ruled in February 2021 that Maria is not disabled. (Id. at 36.) The Appeals Council denied Maria's request for review, (id. at 1), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Maria filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Maria argues that the ALJ erred by: (1) improperly discounting her subjective complaints of pain; (2) failing to find that her depression is severe at step two and then compounding that error by crafting a residual functional capacity ("RFC") that fails to address her limitations; and (3) failing to provide adequate support for the opinion-evidence analysis. (R. 13, Pl.'s Br. at 6.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and his decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a 'logical bridge' between the

evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that remand is warranted because the ALJ failed to consider certain lines of evidence related to the severity of Maria's mental health disorders and her capacity for physical exertion.

A.  **Subjective Symptom Analysis**

Maria argues that the ALJ's gross misunderstanding of fibromyalgia caused her to reject Maria's subjective complaints concerning this condition. (R. 13, Pl.'s Br. at 7.) When assessing a claimant's subjective reports, an ALJ considers objective medical evidence, daily activities, frequency and intensity of symptoms, medications, and treatment to relieve pain or other symptoms, and functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation generally is entitled to great deference because the ALJ observed—to the extent possible in a telephonic hearing—the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb a symptom evaluation if it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

3

Maria first complains that the ALJ improperly relied on irrelevant evidence to discount her statements of fibromyalgia-related pain. (R. 13, Pl.'s Br. at 12 (citing A.R. 28-29).) In particular, the ALJ found Maria's credibility as to the level of her pain to be "inconsistent with the evidence" because "[d]iagnostic imaging of [her] cervical spine did not show any nerve root or spinal cord compromise." (A.R. 28-29.) Maria argues this reliance on imaging was improper because "the extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger point assessment," and as such "objective testing is not a reliable standard by which an ALJ can assess the credibility of an individual's fibromyalgia claims." (R. 13, Pl.'s Br. at 12.) The government counters that Maria misunderstands Seventh Circuit law and the regulations, which "limit[] only the evidence used to *diagnose* fibromyalgia as a medically determinable impairment" but "does not limit the evidence an ALJ can consider in evaluating the *severity* of fibromyalgia for purposes of determining a[n RFC]." (R. 17, Govt.'s Mem. at 12 (citing *Gebauer v. Saul*, 801 Fed. Appx. 404, 410 (7th Cir. 2020) (emphasis in original)).) While the court agrees with the government's summary of the law, it notes that the Seventh Circuit prohibits ALJs from considering a lack of joint swelling evidence when discounting fibromyalgia pain because it is not a fibromyalgia symptom. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Similarly, it does not appear that cervical spine imaging is an indicator of fibromyalgia-related pain—as the test for diagnosing the affliction involves searching for tender points, not internal imaging—and the ALJ does not explain the relationship between the subject

4

imaging and Maria's complaints of pain and its severity. *See id.* at 306. The court therefore agrees with Maria that the ALJ erred when she relied on this evidence to discount Maria's pain allegations.

That said, any error in considering these two data points is harmless because the ALJ adequately supported her finding with a fulsome review of the medical evidence. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Indeed, when discussing Maria's fibromyalgia, the ALJ noted Maria's: (1) complaints of constant and widespread pain and corresponding tender points, (A.R. 28 (citing id. at 436, 452, 464)); (2) pain with range of motion testing in neck and reduced range of motion, (id. (citing id. at 389, 573, 1152)); (3) weakness in the upper and lower extremities, (id. at 28 (citing id. at 390, 1154)); and (4) improvement with physical therapy, (id. (citing id. at 388, 1199)). The ALJ then found that no further limitations were warranted because her physical examinations were void of indicators that she experienced pain while in motion. (See id. at 28-29.) For example, she had a normal gait and could ambulate independently, heel-walk, toe-walk, and squat, had no difficulty in changing positions, and had normal sensation, strength, hand grip, finger grasps, and fine and gross manipulation. (Id.) Maria complains that such findings are inappropriate indicators of fibromyalgia pain, but the Seventh Circuit has considered similar evidence—*e.g.*, "a lack of evidence that [the plaintiff] had significant sensation loss, significantly reduced joint motion, muscle spasms, muscle atrophy, motor weakness, or other symptoms"—in evaluating whether the severity

5

of a claimant's alleged fibromyalgia-induced pain was consistent with the record evidence. *See Gebauer*, 801 Fed. Appx. at 410.

Maria also accuses the ALJ of improperly relying on her daily activities in undermining her credibility. (R. 13, Pl.'s Br. at 12.) The government argues that the ALJ's analysis was appropriate, as she reviewed Maria's daily activities to assess the extent of her pain complaints, not to assess her capacity for full-time employment. (R. 17, Govt.'s Mem. at 14 (citing *Deborah M.*, 994 F.3d at 791).) The court agrees with the government on this point.

The ALJ considered Maria's ability to manage money, (A.R. 262), willingness to provide significant support to an elderly neighbor suffering from Parkinson's disease, (see, e.g., id. at 829 (April 2019 therapy notes show that Maria "transport[ed]" her neighbor to and from physical therapy appointments and stayed with her for eight hours after she had fallen), 835 (July 2020 therapy notes state that Maria "has been trying to continue helping her neighbor with Parkinson's")), and speaking on the phone almost daily with friends, (id. at 1146), and going to church and cooking with her friends, (id. at 263, 272), and found these activities inconsistent with Maria's alleged limitations in remembering, completing tasks, concentrating, understanding, and following instructions, (id. at 29). Further, her ability to care for her neighbor, take walks daily, and satisfy most of her physical therapy goals contradict the restrictions she claims to have in lifting, standing, walking, squatting, bending, standing, reaching, and climbing stairs. (Id.) Because the ALJ provides adequate explanation and support for her subjective symptom

6

analysis and because it is based on specific medical record evidence, this court will not disturb the ALJ's finding. *See Murphy*, 759 at 815.

**B.     Major Depressive Disorder**

Maria argues that the ALJ erred at step two by deeming her major depressive disorder "not severe" and then compounded the error when she crafted the RFC by failing to account for limitations resulting from this mental impairment. (R. 13, Pl.'s Br. at 8-9.) "The Step 2 determination is 'a *de minimis* screening for groundless claims" intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 822 F.3d 690, 697 (7th Cir. 2016) (citing *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)).

At step two of the five-step analysis, the ALJ found that Maria had severe impairments of fibromyalgia, with myofascial pain and generalized pain, and cervical spine degenerative disc disease. (A.R. 23.) Among the ailments that the ALJ deemed non-severe was her "depression with a mood disorder." (Id.) After noting symptoms associated with Maria's depression—including anhedonia, irritability, social withdrawal, and concentration difficulties—the ALJ summarized evidence from the consulting examiners ("CEs") and her own providers regarding her mood and affect, daily activities, and lack of any past psychiatric hospitalizations. (Id. at 24.) The ALJ determined that Maria's depression with mood disorder "does not cause more than minimal limitation in [her] ability to perform basic mental work activities" pursuant to the four areas of mental functioning, but nonetheless "assigned mental limitations in the [RFC] to account

7

for her reported symptoms and fatigue," (id. at 25), including "limitations to simple work instructions" to accommodate a "moderate limitation in concentrating, persisting, and maintain[ing] pace," (id. at 30).

In so finding, however, the ALJ never identified Maria's depression as "major depressive disorder"—the diagnosis assigned by Kenneth Young Center medical providers, (id. at 543), and the ME, (id. at 53). This omission is significant because the Seventh Circuit has held that "[a] diagnosis of major depression means, by definition, that an individual's symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." *O'Connor-Spinner*, 832 F.3d at 693 (citing Am. Psychiatric Ass'n, Diagnostic & Stat. Manual of Mental Disorders at 679-80 (4th ed. text revision 2000)). Indeed, the *O'Connor-Spinner* court went so far as to say that deeming the plaintiff's major depression not severe was "nonsensical" given the diagnosis itself. *Id.* Further still, the ALJ failed to mention Maria's adjustment disorder diagnosis, which her mental health provider noted in treatment records as a condition that "has contributed to poor quality of life and difficulties returning to work." (A.R. 549.)

Although the ALJ failed to classify Maria's major depression as severe at step two, it is axiomatic that a remand on this basis is not required if the ALJ nevertheless accounted for the combined effect of Maria's medically determinable impairments when assessing the RFC. *See Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011); *Colson v. Colvin*, 120 F. Supp. 3d 778, 789 (N.D. Ill. Aug. 14, 2015). The RFC measures the tasks a person can perform given her limitations based on "all

8

the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing a claimant's RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558. 563 (7th Cir. 2009). The ALJ also "must give weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).

Here, the ALJ did not satisfy this obligation because she appears to not have considered treatment evidence from mental health providers concerning Maria's major depressive disorder. Maria argues that the ALJ improperly relied on "findings in 'unremarkable' mental status examinations." (R. 13, Pl.'s Br. at 11.) She also complains that the ALJ cited as support for her findings Maria's denial of "having any difficulty learning any of her previous jobs," as such information was irrelevant to her capacity to learn new skills presently. (A.R. 25 (citing id. at 733).) In presenting her step-two analysis and again in discussing the medical opinion evidence, the ALJ indeed noted findings of normal mental status during examinations. (Id. at 24, 29-32.) But the ALJ also considered an array of other evidence, including: (1) Maria's ability to perform simple calculations and count, (id. (citing id. at 431, 733)); (2) her denial of difficulty getting along with co-workers, (id. (citing id. at 733)), despite her reported feelings of irritability and social

9

withdrawal, (id. (citing id. at 430)); (3) the ME's opinion that Maria's "fatigue might be [the] cause of some mild issues with focus and concentration and some extended cognitive efforts[,]" (id. at 25); (4) notes from Maria and her providers that her depression was in "partial remission" and improving with medication therapy, (id. (citing id. at 430, 792)); and (5) her ability to care for herself and perform her own cooking, laundry, and shopping, (id. at 26 (citing id. at 733)). When discussing the weight, she assigned to medical opinions and prior administrative findings, the ALJ further noted that she "assigned mental limitations in the [RFC] to account for the non-severe mental impairment and reported fatigue," which "includ[ed] the limitations to simple work instructions," (id. at 30), and "the moderate limitation in concentration, persistence, and pace," (id. at 32). In light of these citations, the court concludes that the ALJ did not overly rely on normal mental status exam findings.

However, the RFC assessment is flawed because the ALJ failed to consider various lines of evidence that contradict her findings. First, other than citing normal mental status examination findings, the ALJ does not mention Maria's progress notes from her therapists at Kenneth Young Center spanning from January to May 2019, which reflect reports of fatigue, lack of energy, social withdrawal, diminished pleasure and interest in activities, difficulty concentrating and making decisions, hypersomnia, and insomnia. (See id. at 525-57.) Nor does the ALJ acknowledge that the same evidence explains that Maria's "adjustment disorder"—a diagnosis the ALJ did not discuss in her decision—"has contributed to

10

poor quality of life and difficulties returning to work." (Id. at 549.) This information contradicts the evidence the ALJ relied on when finding that Maria's mental health disorders are not severe.

Further, the ALJ did not mention Maria's psychologist's treatment records from October 2018 to January 2019. Dr. Richard Abrams details in his treatment notes the changes to Maria's depression medications and her serious mental health struggles, including that she "has no insights, is frustrated and angry, and is too scared to recognize and accept her inner feelings," and therefore "cannot change them nor prevent them from overriding her conscious feelings and behavior." (Id. at 1146.) On remand, the ALJ must grapple with these lines of evidence and consider whether her previous analysis is at odds with them and, if so, how the RFC should be amended to resolve the tension.

Relatedly, although the ALJ is correct that records from 2019 indicate that Maria's depression was in partial remission, Maria testified that as of 2020, she had stopped taking antidepressants because they were not helping with her symptoms of pain and difficulty concentrating. (Id. at 75-76.) The ALJ failed to address Maria's reasons for taking her antidepressants and for stopping them and should consider this evidence on remand.

Finally, the ALJ appears to not have considered the ME's testimony confirming a diagnosis of major depression, that "[s]everal of the symptoms identified in the record include difficulty with fatigue," and that it would not be "unusual for [Maria] to experience periods of time in which she doesn't have much

11

physical energy" given that diagnosis. (Id. at 58.) This depression-induced fatigue could affect Maria's ability to operate physically and contextualizes her statements that she tires easily and quickly, even without physical evidence of pain. (See, e.g., id. at 69 (noting she can only do one chore a day in addition to preparing meals because of exhaustion), 72 (noting helping her neighbor for few hours left her exhausted for next three days), 1147-60 (noting during physical therapy functional capacity evaluation Maria's heart rate increased with pain, and she vocalized need for break, suggesting fatigue).) Accordingly, on remand the ALJ must reassess Maria's RFC in light of evidence she appears to have ignored or overlooked.

**C.     Opinion Evidence**

Maria argues that the ALJ failed to articulate why she rejected treating source opinions in favor of prior administrative findings. (R. 13, Pl.'s Br. at 13.) Maria again takes issue with the ALJ's reliance on "mini-mental status examinations," arguing that such examinations are "irrelevant to her ability to perform full-time work." (R. 13, Pl.'s Br. at 14.) Maria filed her claim after March 27, 2017, meaning that the ALJ was not obligated to afford "specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Marc Y. v. Kijakazi*, No. 20 CV 7601, 2023 WL 2751120, at *7 (N.D. Ill. March 31, 2023) (citing 20 C.F.R. § 404.1520c(a)). Under this updated standard, the most important factors when evaluating any medical provider's opinion are "supportability" and "consistency." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(a). Other factors for consideration include the provider-claimant

12

relationship and the provider's specialization. 20 C.F.R. § 404.1520c(c). While ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ found some of the medical evidence to be persuasive, and other not persuasive. She found the following opinion evidence to be persuasive: (1) state agency consultants Drs. Lionel Hudspeth's and David Voss's opinion that Maria does not have a severe mental impairment, (A.R. 29); (2) CE Dr. Michael Ingersoll's opinion that Maria's depression was in partial remission, even if it lacked a "specific functional analysis," (id. at 30); (3) the ME's opinion that Maria "had a moderate limitation in concentrating, persisting, and maintaining pace, but no more than mild limitations in other areas" and that "the criteria of the mental listings were not satisfied," (id.); and (4) CE Dr. Roberta Stahnke's opinion that Maria's "psychological symptoms were not severe enough to prevent her from performing work related activities," (id. at 31). However, the ALJ found the following to be not persuasive: (1) treating counselor Sabina Gal's opinion that Maria was "unable to fulfill her work/job obligations," unable to follow detailed instructions, and would miss more than 3-4 workdays per month, (id. at 31); (2) treating psychiatrist Dr. Abrams's opinion that Maria "would be absent from work more than four days per month" and "had moderate limitations in concentrating, persisting, or maintaining pace, but mild limitations in the other areas," (id. at 32); and (3)

13

primary care physician Dr. Sadowski's opinion that Maria was "incapable of performing even low-stress work," (id.).

Maria's complaints as to the ALJ's analysis of each opinion are similar to the other complaints she has lodged—that the ALJ placed too much stock in the partial remission of her depression, she "had no trouble learning her jobs or getting along with co-workers," she was cooperative during mini-mental status examinations and performed well when they were given, and she never had any psychiatric hospitalization. (R. 13, Pl.'s Br. at 14.) The government in turn argues that the ALJ's conclusion is consistent with and supported by the evidence, that Maria impermissibly seeks to merely reweigh the evidence, (R. 17, Govt's Resp. at 5), and her arguments are "underdeveloped and perfunctory," (id. at 8).

Maria is correct that ALJs may not cherry-pick normal mental status examination evidence to support a finding regarding a claimant's mental health. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). But considering them is permissible so long as the ALJ considers the rest of the medical records. *See Fischer v. Saul*, 2020 WL 1479306, at *11 (E.D. Wis. March 26, 2020) (finding ALJ's consideration of mental status evaluation findings permissible where they were also compared with treatment notes more broadly). As the government notes, and as discussed above, the ALJ considered more than just mini-mental status examination findings in her analysis of the medical opinions. (See R. 17, Govt's Resp. at 5.) Indeed, the ALJ found that the opinions were consistent with treatment records from Maria's treating psychiatrist indicating that her depression

14

was in partial remission in August 2019. (A.R. 29 (citing id. at 792, 887).) Maria's provider noted that "her [symptoms] have improved and now her mood is 'much better' along with her sleep and appetite." (Id. at 792.)

However, ALJs "must rest [their] denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade," *Bakke v. Kijakazi*, No. 22-2236, 2023 WL 2473109, at *6 (7th Cir. March 13, 2023) (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)), a standard that applies to the ALJ's analysis of the consistency of medical opinions with the records evidence, *see Rebecca M. B. v. Kijakazi*, No. 22 CV 41, 2023 WL 3168894, at *4 (N.D. Ill. April 28, 2023). As discussed above, the ALJ failed to consider relevant lines of evidence in her analysis that could support Maria's assertions of severe fatigue and depression—namely treatment notes from Dr. Abrams and Kenneth Young Center providers, portions of the ME's testimony concerning Maria's fatigue, and Maria's testimony and physical therapy notes regarding the same. The ALJ must consider these lines of evidence on remand and reassess the medical opinion evidence.

## Conclusion

For the foregoing reasons, Maria's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

                      **ENTER:**

                      _____
                      **Young B. Kim**
                      **United States Magistrate Judge**

15